**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re PATRIOT NATIONAL, INC. SECURITIES LITIGATION

Case No. 1:17-cv-01866-ER

Honorable Edgardo Ramos

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II. STANDARDS GOVERNING FINAL APPROVAL: RULE 23(e) AND *GRINNELL*........................................................................................................3

III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...........................5

    A. The Settlement Is Procedurally Fair .......................................................5

        1. Plaintiffs and Counsel Have Adequately Represented the Class................6

        2. The Settlement was Negotiated at Arm's-Length.......................................7

    B. The Settlement is Substantively Fair: the Relief Provided is Adequate, Taking into Account the Costs, Risks, and Delay of Continued Litigation............8

        1. The Complexity, Expense, and Likely Duration of the Litigation .............9

        2. Risks of Establishing Liability and Damages ...............................9

        3. Risks of Maintaining Class Action Status .................................13

        4. The Settlement Amount is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation........................................................................................13

    C. The Class's Reaction to the Settlement Supports Final Approval........................16

    D. The Stage of Proceedings and Amount of Discovery Completed ........................16

    E. Defendants' Ability to Withstand a Greater Judgment.........................................18

    F. The Remaining Rule 23(e) Factors Support Final Approval ................................20

        1. The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii)) ................................................................20

        2. The Proposed Award of Attorneys' Fees is Fair and Reasonable (Rule 23(e)(2)(C)(iii)) ...............................................................20

        3. Identification of Agreements in Connection with the Settlement (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3))..................................................21

        4. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)).........................................................................21

IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................21

V.      THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS ....................23

VI.     CONCLUSION................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)......................................................................... 4, 8, 13

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132(CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)................................. 7, 21

*D'Amato v. Deutsche Bank*,
  236 F.3d 78, 8(2d Cir. 2001)............................................................................. 7

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)............................................................................. 6

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ....................................................................... 25

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)....................................................................................... 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  No. 3:02-cv-1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ........................................ 21

*Fishoff v. Coty Inc.*,
  No. 09 Civ. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010)...................................... 10

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)................................................................................ 4

*Hodges v. Bon Secours Health Sys., Inc.*,
  No. 1:16-CV-01079-RDB, 2017 WL 4228018 (D. Md. July 10, 2017)..................................... 8

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) .......................................................................... 11

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................. 17, 20, 21

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d  418 (2001) ........................................................................ 19, 23

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)  9, 13, 17, 19

*In re Bear Stearns Cos., Inc. Sec. Litig.*,
   909 F. Supp. 2d 259 (2012 ........................................................................ 13

*In re Blech Sec. Litig.*,
   No. 94 CIV. 7696 (RWS), 2000 WL 661680 (S.D.N.Y. May 19, 2000) ................................ 15

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) .................................................................... 9

*In re Datatec Sys. Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)...................................... 22

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................ 17

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................ *passim*

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ..................................................................... 9

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).................................... 14

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
   No. 94 Civ. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ................................... 23

*In re Ocean Power Techs., Inc.*,
   No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016) ........................................ 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. Jan. 28, 2019)............................................................. 5

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................... 6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................... 4

*In re Scientific Atl., Inc. Sec. Litig.*,
   754 F. Supp. 2d 1339 (N.D. Ga. 2010) ............................................................ 11

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .................................. 18

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................... 9

*In re Virtus Inv. Ptnrs., Inc. Sec. Litig.*,
    No. 15-cv-1249, 2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018) .................................................. 3

*Kemp-Delisser v. Saint Francis Hosp. & Med. Ctr.*,
    No. 3:15-CV-1113 (VAB), 2016 WL 10033380 (D. Conn. July 12, 2016) .............................. 8

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (2002) .................................................................... 12, 14, 16, 19

*Marsh & McLennan*,
    2009 WL 5178546 ....................................................................... 12, 13, 14

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11-cv-05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) .............................. 13

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ....................................................... 21

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ..................................................................... 14

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 8331(CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................... 7, 9, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..................................................................... 4, 7, 23

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ........................................................................... 4

<u>RULES</u>

Fed. R. Civ. P. 23 ............................................................................. *passim*

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiffs ODS Capital LLC, Barry A. Smith, and Sunil Shah (collectively, "Lead Plaintiffs") and named Plaintiff Adam Kayce (together with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement and Plan of Allocation.[1]

## I.    INTRODUCTION

After navigating hotly contested litigation, Patriot National's intervening bankruptcy and compelled mediation, Plaintiffs have obtained a remarkable $6,500,000 all cash Settlement for the benefit of the Class.[2]  As described below and in the Joint Declaration, this is an excellent result, providing Settlement Class Members with a significant and certain recovery in a case that presented numerous complexities and risks.  The Settlement represents 6.1% of the Settlement Class's maximum potentially recoverable damages, which is an extremely favorable result when compared to the 2.6% median recovery in securities class action settlements with similar aggregate damages.  ¶55.  The Settlement also removes the significant collectability risks that resulted from Patriot National's bankruptcy and wasting Directors and Officers insurance policies ("D&O Policies"), in addition to the litigation risks of motions to dismiss, summary judgment, trial, and any eventual appeal.  An adverse decision at any one of these litigation milestones could result in zero—or a substantially reduced—recovery.

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated December 20, 2018 (ECF No. 101-1) (the "Stipulation") or in the concurrently-filed Joint Declaration of Lionel Z. Glancy and Lawrence Deutsch (the "Joint Decl." or "Joint Declaration").  Citations to "¶__" or "Ex. __" in this memorandum refer to paragraphs in, or exhibits to, the Joint Declaration.

[2] The proposed Settlement provides for the resolution of claims in the Action against Defendants and the Defendants' Releasees.  It does not resolve claims against defendants consolidated into the Action by the Court on July 22, 2019.  *See* ECF No. 123; Joint Decl., ¶¶ 32-33.

In addition to being substantively fair, reasonable and adequate, the Settlement is also the result of a procedurally fair negotiating process. The Settlement was reached only after extensive, arm's-length negotiations, conducted by experienced and well-informed counsel with the assistance of Robert A. Meyer, Esq. and Bruce A. Friedman, Esq. of JAMS.[3] ¶¶20-25. Counsel's substantial efforts and well-developed understanding of the strengths and weaknesses of the action informed the decision to settle. These efforts, as detailed in the Joint Declaration, included, among other things: (i) conducting a legal and factual investigation and drafting the initial complaint; (ii) successfully navigating the lead plaintiff appointment and consolidation process during the pendency of Patriot National's bankruptcy; (iii) conducting an extensive investigation of the claims in the Action, including detailed reviews of SEC filings, press releases, analyst reports, news reports and other public information, and drafting the 219-page consolidated amended complaint; (iv) successfully guiding and maintaining the case through Patriot National's bankruptcy, automatic stay and compelled mediation; (v) engaging in court-ordered settlement negotiations with many other litigants seeking to recover from Patriot National's D&O Policies, including four mediation sessions with Mr. Meyer, some of which were joined by Mr. Friedman, and numerous follow-up discussions; (vi) preparing written mediation submissions supporting Plaintiffs' liability and damages theories; (vii) working with a damages expert, a forensic accounting expert and bankruptcy counsel; and (viii) subpoenaing Patriot National's Litigation Trust to obtain due diligence discovery of over 39,000 documents (equating to approximately 250,000 pages), and reviewing and analyzing the documents. ¶4.[4] In

---

[3] Mr. Friedman was added to address certain insurer and coverage issues.

[4] The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of the factual background and the nature of the claims asserted; the work done by Plaintiffs and Plaintiffs' Counsel to prosecute the action (¶¶7-41); the risks and uncertainties of the litigation (¶¶42-57);

short, the Settlement was negotiated by fully informed counsel under the auspices of two well-respected mediators of complex actions.

Plaintiffs also request approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Plaintiffs' damages expert and is designed to fairly and equitably distribute the proceeds of the Settlement to eligible Settlement Class Members. ¶¶67-73. Plaintiffs respectfully submit that it is fair and it too should be approved.

Finally, the dissemination of the Notice constituted "the best notice . . . practicable under the circumstances" and thus satisfies Rule 23 and due process. The Claims Administrator has mailed more than 13,305 Notice Packets to potential Class Members, published the Summary Notice in multiple news sources, and made the Notice, Claim Form, and other important documents available on a dedicated website. Ex. 1 (Bravata Decl. ¶¶7, 10-12). While the deadline to request exclusion or object to the Settlement has not yet passed, it is telling that as of October 1, 2019, no objections and no requests for exclusion had been received. *Id.* ¶13; ¶65.

For the foregoing reasons, and those set forth below and in the Joint Declaration, Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation. Proposed orders are filed herewith.

## II.    STANDARDS GOVERNING FINAL APPROVAL: RULE 23(e) AND *GRINNELL*

Rule 23(e) requires court approval for any settlement of class action claims, and such approval should be granted "only after a hearing and only on finding that [a proposed settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This determination entails scrutiny of both the procedural and substantive aspects of the proposed settlement. *See In re Virtus Inv.*

---

and the negotiations leading to the Settlement (¶¶20-26).

*Ptnrs., Inc. Sec. Litig.*, No. 15-cv-1249, 2018 WL 6333657, at *1 (S.D.N.Y. Dec. 4, 2018) ("[T]he settlement must be both procedurally and substantively fair.").[5]

As a matter of public policy, courts strongly favor the settlement of complex class action litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (noting the "general policy favoring the settlement of litigation"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Courts in the Second Circuit have long considered the following factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), in evaluating whether a class action settlement is fair, reasonable, and adequate under Rule 23:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). In conducting this analysis, "not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

---

[5] Unless otherwise noted, all internal citations and quotations are omitted and emphasis is added.

Rule 23(e)(2), as amended on December 1, 2018, also instructs that the Court should determine whether the Settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in Rule 23(e)(2) are not intended to "displace" the Second Circuit's *Grinnell* factors, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 918 (Apr. 26, 2018); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. Jan. 28, 2019) ("The Court understands the new Rule 23(e) factors to add to, rather than displace, the *Grinnell* factors."). As demonstrated herein, the Settlement easily satisfies the factors set forth in Rule 23(e)(2) and *Grinnell* and, accordingly, warrants final approval.

## III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    The Settlement Is Procedurally Fair

Rule 23(e)(2)(A), requiring adequate representation, and Rule 23(e)(2)(B), requiring arm's-length negotiations, "constitute the 'procedural' analysis" of the fairness inquiry. *Payment Card*, 330 F.R.D at 29. Each aspect of procedural fairness is satisfied here.

### 1.    Plaintiffs and Counsel Have Adequately Represented the Class

Representative plaintiffs provide adequate representation of a class where they have suffered the same injury as the class members, "vigorously pursu[ed] the claims of the class," and had "no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).[6]

Here, Plaintiffs have adequately represented the Settlement Class by vigorously pursuing their shared claims against Defendants, including by communicating with Lead Counsel on case developments, reviewing significant filings, and conferring with Lead Counsel throughout the settlement negotiations.  Exs. 8-10.  Moreover, the Plaintiffs—investors who purchased Patriot National common stock during the Settlement Class Period and suffered damages as a result— have suffered the same injury as other Settlement Class Members, shared the interests of other Settlement Class Members in obtaining the largest possible recovery from Defendants, and had no interests antagonistic to the interests of other Settlement Class Members.  They have, therefore, adequately represented the Settlement Class.

Plaintiffs' Counsel have also adequately represented the Settlement Class.  Plaintiffs' Counsel are highly qualified and experienced in securities and other complex litigation, as set forth in their firm resumes.[7]  They vigorously prosecuted the Action despite Patriot National's bankruptcy and its waning financial resources to achieve an excellent result.  Indeed, the Settlement was achieved only after Plaintiffs' Counsel thoroughly investigated the Settlement Class's claims – which included reviewing due diligence discovery with the assistance of a forensic accountant, drafting an extensive 219-page consolidated amended complaint, and

---

[6] *See also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest").
[7] *See* Exs. 2-6 (Plaintiffs' Counsel's firm resumes).

successfully navigating Patriot National's bankruptcy and compelled mediation process with many other litigants seeking recovery against the Company's D&O Policies.  ¶¶7-41.  Based on their expertise, experience, and substantial work done in this case, Plaintiffs' Counsel, with a thorough understanding of the risks associated with the Action, respectfully recommend that final approval of the Settlement is in the best interests of the Class.  *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM), 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (judgment of counsel "who have extensive experience in prosecuting complex class actions" is entitled to "great weight.").

### 2.    The Settlement was Negotiated at Arm's-Length

"Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement."  *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132(CM), 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd sub nom*. *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  Moreover, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116. Courts have also recognized that the participation of an experienced, respected mediator weighs in favor of a proposed settlement's procedural fairness.  *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

The Settlement here was reached only after protracted, arm's-length negotiations facilitated by experienced and well-respected neutrals.  Robert A. Meyer, Esq. and Bruce A. Friedman, Esq. of JAMS oversaw settlement negotiations through four mediation sessions and ongoing communications that ultimately culminated in the Parties' agreement to settle the action

for $6.5 million.    ¶¶20-26.    Courts have favorably noted Mr. Meyer's and Mr. Friedman's participation as a factor in granting approval of securities class action settlements, and their participation in the instant Settlement underscores that it is the product of non-collusive, arm's-length negotiations.[8]

### B.    The Settlement is Substantively Fair: the Relief Provided is Adequate, Taking into Account the Costs, Risks, and Delay of Continued Litigation

Rule 23(e)(2)(C) instructs the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).  Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors).  *Grinnell*, 495 F.2d at 463.  As discussed below, each of these factors supports approval of the Settlement.

---

[8] *See, e.g.*, *Kemp-Delisser v. Saint Francis Hosp. & Med. Ctr.*, *Kemp-Delisser v. Saint Francis Hosp. & Med. Ctr.*, No. 3:15-CV-1113 (VAB), 2016 WL 10033380, at *4 (D. Conn. July 12, 2016) (finding that the proposed settlement resulted from informed, extensive arm's-length negotiations, including participating in mediation with an experienced mediator, Mr. Meyer); *Hodges v. Bon Secours Health Sys., Inc.*, No. 1:16-CV-01079-RDB, 2017 WL 4228018, at *2 (D. Md. July 10, 2017) (finding that the proposed settlement resulted from informed, arm's-length negotiations facilitated by a third-party mediator, Mr. Meyer); *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *11 (D.N.J. Nov. 15, 2016) ("Importantly, the parties only reached an agreement in principle to settle after a full-day formal mediation session followed by a number of telephonic negotiation sessions with Mr. Bruce Friedman, Esq[;]" and noting that "the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

### 1.        The Complexity, Expense, and Likely Duration of the Litigation

"Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).[9]   Indeed, courts routinely recognize the "notorious complexity" of securities class actions.  *See, e.g.*, *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).   This action is no exception.   Putting aside the significant risk of proving liability and damages (*see* Sec. III.B.2, *infra*), this action was particularly difficult  given the risks posed by Patriot National's bankruptcy and draining D&O Policies.  ¶¶14-19.

This Action settled after vigorous litigation that included protracted, court-ordered Mediation.   Assuming Plaintiffs' claims survived bankruptcy, motions to dismiss and summary judgment, litigating the Action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor.   Were the litigation to continue, a potential recovery—if any— "would occur years from now, substantially delaying payment . . . to the Settlement Class." *Shapiro*, 2014 WL 1224666, at *8; *see also AOL Time Warner*, 2006 WL 903236, at *8 (settlement "circumvents the difficulty and uncertainty inherent in long, costly trials").   In contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class—approximately 6.1% of maximum damages—without exposing the Settlement Class to the risk, expense, and delay of continued litigation.  ¶¶54-55.

### 2.        Risks of Establishing Liability and Damages

---

[9] *See also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) ("[T]he more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court."); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (class action suits generally "have a well-deserved reputation as being most complex").

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Global Crossing*, 225 F.R.D. at 459. While Lead Counsel believes that Plaintiffs' claims are meritorious, they also recognize that they faced substantial obstacles to proving liability and damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**Establishing Liability:** "The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11. In continued litigation, Defendants could be expected to vigorously defend against Plaintiffs' allegations and to argue that the statements complained of were not materially false and misleading as alleged. ¶48. And, they would no doubt also contest scienter. While Plaintiffs believe they adequately alleged scienter, they recognize the difficulties of proving scienter. Indeed, scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011). Defendants could have raised a number of arguments directed at the adequacy of Plaintiffs' allegations that Defendants acted with sufficient knowledge or recklessness to prevail under the federal securities laws. While Plaintiffs had arguments that the nature and magnitude of alleged facts supported an inference of scienter, Defendants would have presented a number of arguments to the contrary. Defendants could cite to case law that considers a number of adverse facts involving a Company and its executives, but still holds that those facts are not sufficient to establish a strong inference of scienter. Thus, there is no guarantee that Plaintiffs would have prevailed on the scienter issue at the pleading stage, let alone at summary judgment and trial after development of the evidentiary record. ¶¶48-50.

**Loss Causation and Damages:**  Even assuming that Plaintiffs overcame the above risks and successfully established liability, Plaintiffs would have confronted considerable challenges in establishing loss causation and damages.  Plaintiffs must establish that it was the revelation of Defendants' misrepresentations or omissions which caused Plaintiffs to incur a loss, and not non-fraud related business or macroeconomic factors.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").  Disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally."  *Global Crossing*, 225 F.R.D. at 459.  Accordingly, the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud."  *Id.*

The Parties would have held disparate views with respect to damages, and Defendants' anticipated challenges to loss causation and damages could pose a serious risk to the Settlement Class at the pleading stage, summary judgment, trial, and on appeal.  *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).  While Plaintiffs allege that the Settlement Class is entitled to damages, Defendants would no doubt argue that the Settlement Class is only entitled to certain (or none) of the "corrective disclosures" outlined in the Complaint. In complex securities cases, it is axiomatic that the Parties would rely on expert testimony to assist the jury in determining damages.  *See Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert

testimony which may, or may not, be, accepted by a jury."). While Plaintiffs would argue that the stock price declines were attributable to corrections of the alleged misstatements and omissions concerning Patriot National's business and operations and present expert testimony addressing loss causation and damages, there is little doubt that Defendants would proffer their own expert to offer contrary testimony with respect to all of the price declines. ¶¶51-53. *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."). In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury. *In re Telik*, 576 F. Supp. 2d at 579-80.

Therefore, even if liability were established at trial, "a jury could find that damages were only a fraction of the amount that plaintiffs contend" because "[a] jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses." *Del Global*, 186 F. Supp. 2d at 365. If a jury were to accept Defendants' arguments, damages in this case could be greatly reduced or even eliminated. *Marsh & McLennan*, 2009 WL 5178546, at *6 ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."). As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor favors approving the settlement." *Global Crossing*, 225 F.R.D. at 459.

Given Plaintiffs' Counsel's very substantial analysis of the strengths and weaknesses of this Action, through their extensive investigation into the Company, coupled with the information gleaned from Patriot National's bankruptcy proceedings, numerous mediation sessions, expert consultation, and due diligence discovery, they have a clear understanding of the specific risks attendant to their case beyond those noted above. However, given that the Action

continues against the defendants consolidated into the case on July 22, 2019 (*i.e.*, the auditors and underwriters), Lead Counsel believe that going into further detail could prejudice the ongoing litigation. The noted uncertainties and the additional risks attendant to the need to prevail at the pleading stage, summary judgment and trial, and then at the appeals that would follow if Plaintiffs prevailed at those stages, support the reasonableness of the decision to settle with the Defendants on the terms of the proposed Settlement.

### 3.    Risks of Maintaining Class Action Status

Although class certification has not yet been briefed in this case, Defendants would undoubtedly have raised vigorous challenges to class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268.  If a class were to be certified, Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage.").  Here, "the uncertainty surrounding class certification supports approval of the Settlement," *Marsh & McLennan*, 2009 WL 5178546, at *6, because "even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 WL 903236, at *12.

### 4.    The Settlement Amount is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

Courts often analyze the last two *Grinnell* factors together.  *See Grinnell*, 495 F.2d at 463.  In doing so, courts "consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Id*. at 462.  This is not a "mathematical equation yielding a particularized sum." *Massiah v. MetroPlus Health Plan, Inc*., No. 11-cv-05669 (BMC), 2012

WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). Instead, "there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Shapiro*, 2014 WL 1224666, at *11 (settlement judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").

Plaintiffs submit that the $6.5 million settlement is well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation, particularly Patriot National's bankruptcy and ability to satisfy a judgment. If Plaintiffs overcame all the obstacles noted above to establishing liability, the realistic ***potential maximum*** recoverable damages at trial would be approximately $106 million. ¶54. Under that scenario, the $6.5 million settlement represents approximately 6.1% of the ***potential maximum*** damages. This is an extremely favorable result in a securities class action. *Id.*

In comparison, the median recovery in all securities class actions in 2018 was approximately 2.6% of estimated damages, and the median recovery in securities class actions with estimated damages between $100-$199 million had a 3.1% average recovery. ¶55 (citing Ex. 7) (Stefan Boettrich and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review (NERA Jan. 29, 2019) at 35, Fig. 27); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding settlement representing recovery of approximately 6.25% of estimated damages to be "at the higher end of the range of reasonableness of recovery in class actions securities litigations").

Moreover, weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint ***as well as the ability of Defendants to pay the judgment***." *Del Global*, 186 F. Supp. 2d at 365

(emphasis added).  Here, there was no guarantee that Plaintiffs would be able to collect on a judgment greater than the Settlement, and as discussed *supra* in Section III.B.E, Defendants would have likely asserted significant loss causation and damages arguments that, if accepted, would have reduced or completely eliminated damages.  ¶53.  In addition, this case could be expected to last against the Defendants for several more years had the Settlement not been reached.  "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery."  *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000).  Insurance coverage was being swiftly depleted because of the multitude of pending litigation against Patriot National.  For that reason, and because Patriot National's assets were so limited, the Bankruptcy Court mandated that the Mediation take place and stayed all related matters to see if a sensible division of the relevant D&O Policies could be reached.  Indeed, at the time the Settlement was reached, the 2016 D&O policy had been significantly eroded.  Due to litigation defense expenditures in the various cases against Patriot National, of the $60 million 2016 D&O policy, only $35 million remained.  By the time of the August 10, 2018 mediation session, only $30 million (including $20 million A side coverage) remained.  And, because the initial fraud claims arose in 2016, the insurers refused coverage under the 2017 policy, and any further litigation of this issue would not likely yield much, if any, benefit.  Further, Patriot National was under investigation by the SEC, and  Defendants  intended  to  reserve  $10  million  of  the  insurance  proceeds  for  the  SEC investigation.  ¶¶43-47.  Given Patriot National's inability to pay an excess judgment and the fact that the available insurance coverage would be further eroded as the various litigation continued, the Court should consider that the Settlement provides for payment now without any further risk

to the Settlement Class, rather than a speculative and likely lower payment years later.

### C.    The Class's Reaction to the Settlement Supports Final Approval

The second *Grinnell* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object.  As required by Rule 23(e)(4) & (5), the Settlement affords Class Members the opportunity to request exclusion from, or object to, the Settlement.  Ex. 1A (Notice at 12-13).

More than 13,305 Notice Packets have been distributed to potential Settlement Class Members, and the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* on August 26, 2019.  Ex. 1B (Bravata Decl. ¶10).  The Notice contains a description of the Action, the Settlement, and information about Settlement Class Members' rights to participate in the Settlement by submitting a Claim Form; to object to the Settlement, the Plan of Allocation, or Lead Counsel's motion for attorneys' fees and expenses; or to request exclusion from the Settlement Class.  As of October 1, 2019, 197 Claim Forms have been submitted, no requests for exclusion had been received, and no objections have been submitted. *Id.* ¶¶13-14; ¶65.[10]  The Settlement Class's overwhelmingly positive reaction strongly supports final approval of the Settlement.  *See, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

### D.    The Stage of Proceedings and Amount of Discovery Completed

The third *Grinnell* factor assesses "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the

---

[10] The deadline to request exclusion from, or to object to any aspect of, the Settlement is October 16, 2019; if additional exclusions or objections are received after the date of this filing, they will be addressed on reply.  Moreover, in securities class actions most claim forms are filed on or right before the claims filing deadline, which is December 17, 2019 in this case.

strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015); *see also Global Crossing*, 225 F.R.D. at 459 (final approval warranted where counsel had "developed an informed basis from which to negotiate a reasonable compromise").

At the time the Settlement was reached, the Parties had gained a thorough understanding of the strengths and weaknesses of the claims and the obstacles to success. As detailed in the Joint Declaration, Plaintiffs' Counsel dedicated significant time and effort to prosecuting the action, including, among other things: (i) conducting a comprehensive legal and factual investigation into the claims asserted and drafting the initial complaint; (ii) successfully navigating the contested lead plaintiff appointment and consolidation process despite Patriot National's bankruptcy; (iii) drafting a 219-page consolidated amended complaint; (iv) successfully guiding and maintaining the case through Patriot National's bankruptcy, automatic stay and compelled mediation; (v) engaging in settlement negotiations, including four mediation sessions with Mr. Meyer, some of which were joined by Mr. Friedman, and numerous follow-up discussions; and (vi) subpoenaing Patriot National's Litigation Trust to obtain due diligence discovery of over 39,000 documents produced in the Hedge Fund cases and the *Wasik* case. ¶4.

In light of these efforts, Plaintiffs and Plaintiffs' Counsel had a strong understanding of the claims and defenses asserted and the significant risks to establishing liability, and damages and collecting an excess judgment in order to intelligently negotiate the Settlement. *See AOL Time Warner*, 2006 WL 903236, at *10; *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (where "no merits discovery occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due

diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) ("[a]lthough the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms").

### E.    Defendants' Ability to Withstand a Greater Judgment

Even if Plaintiffs were able to overcome the significant risks described above and prevail at trial, they would still face the very real risk that Defendants would be unable to satisfy any judgment obtained due to Patriot National's bankruptcy and limited insurance coverage.  Patriot National's reported financial condition deteriorated severely in the time since the initial complaint was filed in March 2017.  Indeed, the Company's financial collapse resulted in its January 2018 bankruptcy filing.  Patriot National's market capitalization was approximately $76 million when *Gingello* was filed, and had been approximately $125 million two weeks earlier. The Company was in bankruptcy by the time the Parties commenced the Mediation.  Though the Class Plaintiffs filed a claim in the bankruptcy, there were no prospects for recovery from the bankruptcy estate due to senior claims, including that of Patriot National's lender, Cerberus, that held a secured claim of over $200 million.  As of January 2018, Patriot National only had assets of about $92 million and liabilities of approximately $286 million.  ¶43.

Thus the only potential source of recovery for Plaintiffs and the Settlement Class was the Company's D&O Policies.  However, the Settlement Class was not the only claimant seeking to recover under these insurance policies.  Not only did Cerberus have a (partially) secured claim, but it had also provided notice to Patriot National's D&O insurers that it had a claim based on

wrongful acts of Patriot National's directors and officers.  In addition, First Insurance Funding had a lien on Patriot National's D&O proceeds, and there was a $215 million claim against the directors and officers by the creditors committee.  These creditors, in addition to the investors from the Hedge Fund Cases and the shareholder actions, all sought to recover against dwindling insurance policies.  For that reason, and because Patriot National's assets were so limited, the Bankruptcy Court mandated that the Mediation take place and stayed all related matters to see if a sensible division of the relevant insurance policies could be reached.  ¶44.

At the time the Settlement was reached, the 2016 D&O policy had been significantly eroded, and only $30 million (including $20 million Side A coverage) remained.  Moreover, the 2017 D&O insurers refused coverage under that policy, and further litigation on the issue would have likely been unfruitful.  Finally, Patriot National intended to reserve $10 million of the insurance proceeds for the SEC investigation.  ¶¶45-46.  Thus, it is clear from Patriot National's bankruptcy and the court-ordered Mediation that the Company's insurance coverage is the only practical source of recovery.  Significantly, these insurance funds would be heavily reduced by defense costs if the litigation continued.  Courts have recognized that "[t]his factor typically weighs in favor of settlement where a greater judgment would put the defendant at risk of bankruptcy or other severe economic hardship."  *AOL Time Warner*, 2006 WL 903236, at *12; *see also Global Crossing*, 225 F.R.D. at 460 (since the companies had filed for bankruptcy, "without the proposed settlement, class members might well receive far less than the settlement would provide to them, even if they could prevail on their claims"); *Del Global*, 186 F. Supp. 2d at 365 (in light of the company's "dire financial condition, it is unlikely that the Company could withstand a substantial judgment," making a greater recovery than the settlement difficult); *Am. Bank Note*, 127 F. Supp. 2d at 427 (noting the "serious question as to the ability of the

Defendants to withstand a greater judgment" because the company's financial condition had substantially weakened at the time of settlement discussions, and its likelihood of filing for bankruptcy increased with the passage of time).  The very significant risk here that continued litigation would yield a smaller recovery – or no recovery at all – several years in the future weighs heavily in favor of the Settlement.

      **F.**      **The Remaining Rule 23(e) Factors Support Final Approval**

              **1.**      **The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii))**

The Settlement proceeds will be allocated to Settlement Class Members who submit valid Claim Forms in accordance with the Plan of Allocation.  *See* Sec. IV, *infra*.  The Claims Administrator, Strategic Claims Services ("SCS"), will review and process all Claim Forms received, provide claimants with an opportunity to cure any deficiency in their claim or request review of the denial of their claim, and ultimately mail a check to or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, upon approval of the Court.  This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective.  Moreover, the Settlement is not "claims-made"—none of the Settlement will revert to Defendants.

              **2.**      **The Proposed Award of Attorneys' Fees is Fair and Reasonable (Rule 23(e)(2)(C)(iii))**

The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees are taken into account.  As discussed in detail in the accompanying Fee Memorandum, the proposed attorneys' fees of 33%, to be paid upon approval by the Court, are reasonable in light of the substantial work and efforts of Plaintiffs' Counsel, their significant investment of resources in the case, their skillful prosecution of the action for the benefit of the Class, the risks that they faced in the litigation, and the overall benefit of the

Settlement achieved.  Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees is entirely separate from approval of the Settlement; neither Plaintiffs nor Plaintiffs' Counsel may terminate the Settlement based on the ultimate award of attorneys' fees or expenses.

### 3.    Identification of Agreements in Connection with the Settlement (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3))

The Parties entered into a confidential agreement establishing conditions under which Defendants may terminate the Settlement if a certain threshold of Settlement Class Members submit valid and timely requests for exclusion.  This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

### 4.    The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D))

Rule 23(e)(2)(D) requires that the Court assess whether "the proposal treats class members equitably relative to each other."  The Settlement does so.  All Authorized Claimants will receive their *pro rata* share of the Net Settlement Fund based on the amount of their Recognized Loss calculated under the Plan of Allocation.  Ex. 1A (Notice at 8-12); *see also* Sec. IV, *infra* (regarding Plan of Allocation).

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

A plan of allocation, like a settlement itself, "must be fair and adequate" to warrant approval.  *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015).  A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *City of Providence*, 2014 WL 1883494, at *10. Accordingly, "courts look primarily to the opinion of counsel" in determining whether a

proposed plan of allocation is fair and adequate to warrant approval. *Giant Interactive*, 279 F.R.D. at 163.

The proposed Plan of Allocation is set forth in the Notice disseminated to the Settlement Class. *See* Notice (Ex. 1A) at 8-12. Lead Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages expert with the objective of equitably distributing the Net Settlement Fund. The Plan of Allocation was developed based on an event study, which calculated the estimated amount of artificial inflation in Patriot National common stock on each day of the Settlement Class Period as a result of Defendants' alleged materially false and misleading statements and omissions. In calculating this estimated alleged artificial inflation, the damages expert considered price changes in Patriot National common stock in reaction to the alleged corrective disclosures, adjusting for factors attributable to market or industry forces. Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase of Patriot National common stock during the Settlement Class Period for which adequate documentation is provided. The calculation of Recognized Loss Amounts is explained in detail in the Notice and incorporates several factors, including when and for what price the Patriot National common stock was purchased and sold, the estimated artificial inflation in the Patriot National common stock prices at the time of purchase and sale, as determined by Plaintiffs' damages expert, and the strength of the claims. *See In re Datatec Sys. Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and sales of the securities at issue are common"). The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss Amounts.

Lead Counsel believes that the proposed Plan of Allocation provides a fair and

reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as result of the conduct alleged in the Action, and their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan. *Am. Bank Note*, 127 F. Supp. 2d at 430. To date, no objections to the Plan of Allocation have been filed, suggesting that the Settlement Class also finds the Plan of Allocation to be fair and reasonable. *See* ¶74; *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 Civ. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan). Moreover, similar plans have repeatedly been approved by courts in this District. *See, e.g.*, *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

Because the Plan of Allocation represents a fair and equitable method for allocating the Net Settlement Amount among Settlement Class members, it merits final approval from the Court.

## V.    THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

Rule 23(e) and due process together require that notice of a settlement be "reasonable"— *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also Merrill Lynch Research*, 246 F.R.D. at 166 ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential

class members.").

Both the substance of the Notice and the method of its dissemination to the Class satisfies those standards here.  In accordance with the Preliminary Approval Order, SCS disseminated more than 13,305 Notice Packets to potential Class Members.  *See* Ex. 1 (Bravata Decl. ¶7). SCS undertook substantial efforts to ensure that as many potential Class Members as possible were identified and received Notice of the Settlement.  *Id.* ¶¶4-9.

The Notice informs Class Members of, among other things: (a) the nature of the action; (b) the definition of the Class; (c) the claims and defenses asserted; (d) a description of the terms of the Settlement; (e) the right of a Class Member to enter an appearance; (f) the right of a Class Member to request exclusion from the Class, and instructions, manner, and time for doing so; (g) the right of a Class Member to object to any aspect of the Settlement, and the instructions, manner, and time for doing so; (h) the binding effect of the Settlement on Class Members that do not elect to be excluded; and (i) the date and time of the final Settlement Hearing.  *See* Fed. R. Civ. P. 23(c)(2)(B); Ex. 1A (Notice).  The Notice also advises that Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed 33% of the Settlement Fund, as well as reimbursement of Litigation Expenses, including reimbursement to the representative Plaintiffs for expenses related to their representation of the Settlement Class.  Ex. 1A (Notice ¶5).

In addition to mailing more than 13,305 copies of the Notice Packet, SCS caused the Summary Notice to be published in *Investor's Business Daily* and transmitted once over the *PR Newswire* on August 26, 2019.  Ex. C (Bravata Decl. ¶10).  SCS also posted the Notice, Claim Form, Stipulation of Settlement, and other important case documents on a website dedicated the

Settlement (www.patriotnationalsettlement.com).    Bravata Decl. ¶12.    SCS also established a toll-free number to respond to Class Member inquiries. *Id.* ¶11.

These various methods of notice provided all of the necessary information for Class Members to make an informed decision regarding the Settlement.    Moreover, the combination of Notice Packets sent individually by first-class mail and/or e-mail to those Class Members who could be identified with reasonable effort, combined with the print and Internet-based publication of Settlement documents was "the best notice . . . practicable under the circumstances."    Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Dornberger v. Metro. Life Ins. Co*., 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (approving notice plan and concluding that "reasonable efforts were taken to notify all members of the class" where part of the class received direct mail notice and part of the class was covered by publication notice).

## VI.    CONCLUSION

For the reasons stated herein and in the Joint Declaration, Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation.


Dated: October 2, 2019                **BERGER MONTAGUE PC**

                                         By: *s/ Lawrence Deutsch*
                                         Lawrence Deutsch
                                         Jacob M. Polakoff
                                         1818 Market Street, Suite 3600
                                         Philadelphia, PA 19103
                                         Telephone: (215) 875-3000
                                         Facsimile: (215) 875-4604
                                         Email: ldeutsch@bm.net
                                                 jpolakoff@bm.net

**GLANCY PRONGAY & MURRAY LLP**
Brian F. Murray
230 Park Ave, Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: bmurray@glancylaw.com

-and-

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Co-Lead Counsel for Plaintiffs*

**THE GRANT LAW FIRM, PLLC**
Lynda J.  Grant
521 Fifth Avenue, 17th Floor
New York, NY 10175
Telephone: (212) 292-4441
Facsimile: (212) 292-4442
Email: lgrant@grantfirm.com

**SAFIRSTEIN METCALF**
Peter Safirstein
Elizabeth Metcalf
The Empire State Building
350  Fifth  Avenue,  Suite  5960
New  York,  NY  10118
Telephone: (212) 201-2845
Email:psafirstein@safirsteinmetcalf.com
emetcalf@safirsteinmetcalf.com

**BRONSTEIN,  GEWIRTZ  &  GROSSMAN,  LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (917) 697-8209
Email: peretz@bgandg.com

*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.


Dated: October 2, 2019              *s/ Lawrence Deutsch*
                                    Lawrence Deutsch