UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re PATRIOT NATIONAL, INC.
SECURITIES LITIGATION

**OPINION AND ORDER**

17 Civ. 1866 (ER)

RAMOS, D.J.:

This is a consolidated shareholder action against Patriot National, Inc. ("Patriot"), a now-defunct company that provided technology and outsourcing services in the insurance industry, and several of its former officers and entities involved in its initial public offering.  On July 22, 2019, the Court consolidated this action with *McIntire v. Mariano*, No. 19 Civ. 98, a related action that was originally filed in the Southern District of Florida and then transferred to this District.  On the same day, the Court granted preliminary approval to Co-Lead Plaintiffs' settlement with numerous of Patriot's officers and directors.  Co-Lead Plaintiffs, along with plaintiffs from the *McIntire* action and Harold J. Ireland, Jr. (collectively, "Plaintiffs"), now seek to file a consolidated Proposed Second Amended Complaint ("PSAC") against additional defendants that were named in *McIntire* but have not previously been named in this consolidated case.  For the reasons discussed below, Plaintiffs' motion is DENIED.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Patriot's Bankruptcy and the Appointment of Co-Lead Plaintiffs

The procedural history of this case is *sui generis*.  This action was first filed on March 14, 2017 by Plaintiff Anthony Gingello as *Gingello v. Patriot National, Inc*.  Gingello alleged violations of Section 10(b) of the Securities Exchange Act against Patriot, its former CEO Steven

Case 1:17-cv-01866-ER   Document 196   Filed 08/05/21   Page 2 of 26


M. Mariano, and its former Vice President, Chief Financial Officer and Treasurer, Thomas C. Shields, as well as violations of Section 20(a) of the Exchange Act against the individual defendants. *See* Doc. 1. Gingello alleged that Patriot failed to disclose multiple materially adverse facts about the company's business, including that, *inter alia*, Patriot had made $30 million in cash payments to Guarantee Insurance Company ("GIC"), a client company also controlled by Mariano. *Id.* at ¶ 39. *Gingello* was consolidated with a later-filed action, *Kayce v. Patriot National, Inc.*, on October 12, 2017. Doc. 31. The *McIntire* action was filed in the Southern District of Florida on January 12, 2018. The *McIntire* Plaintiffs raised Section 10(b) and 20(a) claims against Patriot's officers, as well as claims under Section 11 and Section 12 of the Securities Act against Patriot's Underwriters[1] and BDO, Patriot's independent auditor. In addition, they brought Section 10(b) claims against BDO. At the time the *McIntire* action was filed, several competing lead plaintiff appointment motions were pending in this action; however, the *McIntire* Plaintiffs did not seek appointment as lead plaintiffs.

On February 1, 2018, Patriot filed a suggestion of bankruptcy, and the Court stayed this case. Docs. 42, 43. On February 9, 2018, the plaintiffs in *Gingello*, as well as ODS Capital LLC, Barry A. Smith and Sunil Shah, wrote to the Court to seek a temporary lift of the stay for the purpose of appointing ODS, Smith and Shah as Co-Lead Plaintiffs. Doc. 44. In their letter, Co-Lead Plaintiffs first brought the *McIntire* Complaint to the Court's attention, characterizing it as an "end-run" around the Private Securities Litigation Reform Act ("PSLRA") that "threaten[ed] the interests of the Plaintiff class." *Id.* at 6–7. Co-Lead Plaintiffs further argued that the *McIntire* Plaintiffs had a conflict of interest because they were involved in a derivative

---

[1] Patriot's "Underwriters" collectively refers to UBS Securities, LLC, BMO Capital Markets Corp., SunTrust Robinson Humphrey, Inc., JMP Securities LLC and William Blair & Company, LLC. *See McIntire* Complaint, No. 19 Civ. 98 at Doc. 1 ¶28.

suit in Delaware on behalf of Patriot, and were otherwise unfit to represent the class.  *Id.*  Co-Lead Plaintiffs argued that, if appointed, they would protect the class by seeking consolidation of this action with *McIntire*.  *Id.*  Soon thereafter, Co-Lead Plaintiffs wrote a letter supplementing their request, also noting that they wished to appear on behalf of the class at an upcoming mediation that had been ordered by the bankruptcy court.  Doc. 50.

Although they were not parties to this case, the *McIntire* Plaintiffs responded to Co-Lead Plaintiffs' letter, objecting to the request.  Doc. 53.  The *McIntire* Plaintiffs argued that this case should remain stayed pending the resolution of *McIntire*, which had not been stayed.  Doc. 53 at 2.  They also argued that they had brought stronger claims against Patriot across a longer class period, and asserted that "if the SDNY Actions proceed, they will almost certainly be transferred to the Southern District of Florida, where they will be consolidated with the *McIntire* Action."  *Id.* at 6.  On February 27, 2018, over the objection of the *McIntire* Plaintiffs, the Court temporarily lifted the stay for the purpose of appointing Co-Lead Plaintiffs and permitting them to participate in the bankruptcy court's mediation.  Doc. 60.

### B.    The FAC and Partial Settlement

The stay in this matter remained in place until September 2018.  On September 6, 2018, Co-Lead Plaintiffs wrote to inform the Court that they had reached an agreement in principle with defendants Mariano and Shields, as well as with other former directors and officers of Patriot (collectively, the "Settling Defendants").  *See* Doc. 68.  Co-Lead Plaintiffs requested leave to file a consolidated amended complaint (the "First Amended Complaint or "FAC"), which they stated would name all of the Settling Defendants for the purpose of facilitating the settlement they had negotiated.  *Id.* at 2.  They also stated that the proposed FAC would expand the class period, name BDO and the Underwriters, and assert additional Securities Act claims—

in substance, that Co-Lead Plaintiffs now intended to raise the claims first asserted in *McIntire*. *Id.* at 1 n.1.  Finally, Co-Lead Plaintiffs noted that they had filed a motion to intervene in *McIntire*, seeking its transfer to this District.  *Id.*  This motion had been filed in *McIntire* the prior day, September 5, 2018.  *See* No. 19 Civ. 98 at Doc. 50.

The *McIntire* Plaintiffs wrote to the Court the next day, September 7, 2018.  Doc. 69. They argued that approving a settlement with Settling Defendants and permitting the Co-Lead Plaintiffs to file the FAC would be to the detriment of numerous class members.  *Id.* at 1–2.  They further argued that, if the Court permitted Co-Lead Plaintiffs to file the FAC, it should also re-open the lead plaintiff appointment process.  *Id.* at 2.  Finally, the *McIntire* Plaintiffs informed the Court that they were seeking an order from the Judicial Panel on Multidistrict Litigation ("JPML") to centralize these actions.  *Id.* at 1–2.  The Court subsequently granted Co-Lead Plaintiffs leave to file the FAC.  Doc. 72.

Co-Lead Plaintiffs filed the FAC on October 18, 2018.  Doc. 74.  As indicated in Co-Lead Plaintiffs' September 6, 2018 letter, the FAC named additional directors and officers of Patriot to facilitate the settlement with the Settling Defendants.  However, it did not name the Underwriters or BDO.  Instead, it included a footnote indicating that a decision on the motion to intervene in *McIntire* had not yet been issued, and that Co-Lead Plaintiffs would seek to amend the Complaint again if their motion were granted.  It stated:

> As the Court is aware, Co-Lead Plaintiffs have moved to intervene in the related *McIntire v. Mariano*, 18-cv-60075-BB (S.D. Fla.) action and have that action transferred to this Court.  If the *McIntire* court grants Co-Lead Plaintiffs' motion, Co-Lead Plaintiffs will seek (1) to have *McIntire* consolidated into this action, and (2) this Court's leave to file an additional amended complaint to effectuate that consolidation.
>
> *Id.* n. 1.

4

After Co-Lead Plaintiffs filed the FAC, the *McIntire* Plaintiffs sought to reopen the lead plaintiff appointment process in this Court, arguing that the FAC had greatly expanded the class period and that their financial interest was much more significant than Co-Lead Plaintiffs' interest.  Doc. 75.  Meanwhile, the parties continued to fight over control of this action in front of the JPML.  On December 6, 2018, while the *McIntire* Plaintiffs' request to re-open the lead plaintiff appointment process was under consideration in this Court, the JPML issued an order denying the request to centralize this action in Florida.  Doc. 92.  On December 28, 2018, the Southern District of Florida subsequently granted Co-Lead Plaintiffs' motion to intervene and transfer *McIntire* to this District.  Doc. 103-1.  *McIntire* was transferred to the S.D.N.Y. and designated Case No. 19 Civ. 98.  Co-Lead Plaintiffs thereafter sought to consolidate *McIntire* with this action.  Doc. 108.  While the *McIntire* Plaintiffs did not further object to consolidation at that point, they requested to be appointed as lead plaintiffs for all claims in *McIntire* that were not asserted in the FAC.  Doc. 119 at 2–3.

On July 22, 2019, the Court granted preliminary approval of the settlement with the Settling Defendants.  In the same order, it: (1) denied the *McIntire* Plaintiffs' request for republication and reopening of the lead plaintiff process; (2) granted the motion to consolidate this case with *McIntire*; and (3) denied the *McIntire* Plaintiffs' request to be appointed lead plaintiffs for the claims asserted in *McIntire*.  Doc. 123.  The Court ultimately approved the settlement on November 6, 2019.  Doc. 153.  Following an appeal by the *McIntire* Plaintiffs, the Second Circuit affirmed the Court's November 6, 2019 judgment approving the settlement on October 26, 2020.  *See* Doc. 159.

### C.    The PSAC Request

On October 26, 2020, the same day the Second Circuit returned its mandate, Co-Lead Plaintiffs sought a conference regarding their desire to file the PSAC.  Doc. 160.  Defendants wrote to oppose the proposed amendment on November 10, 2020.  Doc. 162.  The *McIntire* Plaintiffs did not join Co-Lead Plaintiffs' original request, and instead wrote separately to note that they had previously raised several of the same issues cited by Defendants in their opposition letter—such as the fact that the Co-Lead Plaintiffs had potentially failed to assert the Securities Act claims within the three-year statute of repose.  Doc. 165.  The *McIntire* Plaintiffs noted, however, that such obstacles "do not apply to them" and that "the most efficient way for these claims to be adjudicated on their merits is to allow [the *McIntire* Plaintiffs] to litigate them."  *Id.* at 2.  The Court permitted Co-Lead Plaintiffs to seek leave to amend.   However, the two sets of plaintiffs have since put aside their differences, as the instant motion is made jointly on behalf of both Co-Lead Plaintiffs and the *McIntire* Plaintiffs.

The PSAC would bring claims under Section 11 of the Securities Act and Section 10(b) of the Exchange Act against BDO, Patriot's Auditor, as well as claims under Section 11 and Section 12 of the Securities Act against Patriot's Underwriters.  These claims were all first alleged in *McIntire* but have not been previously alleged in this consolidated case.  Plaintiffs note that they have also supplemented the claims originally alleged in the *McIntire* complaint with "newly-obtained facts and analysis that were unavailable at the time the *McIntire* complaint and the FAC were filed."  Doc. 171, Pls' Br., at 11.  In addition to the *McIntire* Plaintiffs, the PSAC would add Harold J. Ireland, Jr., a putative class member who has not previously been named in any complaint.

Defendants oppose the motion on several grounds. They first argue that Plaintiffs must meet the more stringent standard set forth in Fed. R. Civ. P. 60(b), rather than Rule 15's liberal standard for amendment, because judgment has been entered regarding all the Settling Defendants. Doc. 175 at 11. They also argue that leave to amend should be denied even under Rule 15, based on the delay caused by the intra-Plaintiff conflict described above, the resulting prejudice to defendants, and the purported futility of amendment based on, *inter alia*, the expiration of the statutes of limitations and repose. *Id.* at 17–18. They also argue that Co-Lead Plaintiffs lack standing to assert the Section 11 and 12 claims. *Id.* at 24. BDO has filed a brief incorporating the Underwriters' arguments, and separately argues that the Exchange Act claims against it are barred by the statute of limitations. Doc. 177 at 4. The Court held oral argument on July 8, 2021.

## II.   LEGAL STANDARD

### A.   Rule 15

Once the time for amending pleadings as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court "should freely give leave when justice so requires," *id.*, and leave to amend may be denied only when "there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court may also deny leave for "repeated failure to cure deficiencies by amendments previously allowed." *Foman*, 371 U.S. at 182.

### B.   Rule 60(b)

A plaintiff "seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Rules 59(e) or 60(b)." *Metzler Inv. Gmbh. v. Chipotle*

*Mexican Grill, Inc.*, 970 F.3d 133, 145 (2d Cir. 2020) (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008)).  Under Rule 60(b), a Court may "relieve a party or its legal representative from a final judgment, order, or proceeding."  Fed. R. Civ. P. 60(b).  Grounds for relief include, *inter alia*, "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; or that "the judgment is void."  Rule 60(b) also contains a catch-all provision for "any other reason that justifies relief."  *See* Fed. R. Civ. P. 60(b)(6).  Under this provision, a plaintiff must demonstrate "extraordinary circumstances" that would justify relief.  *Metzler*, 970 F.3d at 143 (quoting *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)).

## III.    DISCUSSION

### A.    The Applicable Legal Standard

Defendants first argue that this case is properly analyzed under Fed. R. Civ. P. 60(b), not 15(a), citing *Metzler Inv. Gmbh. v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020).  In *Metzler*, the Second Circuit held that, when a party seeks leave to file an amended complaint following the entry of a final judgment against defendants, it must first have that judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b).  *Id.* at 142.  The *Metzler* court noted that "[i]t would be contradictory to entertain a motion to amend the complaint without a valid basis to vacate the previously entered judgment."  *Id.*  (internal citation and quotation marks omitted).

However, *Metzler* arose in a quite different posture than this case.  In *Metzler*, the district court granted the plaintiffs' motion to dismiss the second amended complaint, denied them leave to file a third amended complaint, and entered judgment for defendants.  *Id.* at 135–36.  The plaintiffs then again sought leave to file a proposed third amended complaint.  *Id.* at 141.

However, the stated purpose of the *Metzler* plaintiffs' proposed third amended complaint was newly-discovered evidence—they did not seek to assert claims against *different* defendants who had been named in a consolidated member case (i.e., against defendants who were not subject to the previously-entered judgment).  *Id.*; *see also* Case No. 16 Civ. 141 (KPF) Doc. 106.  Indeed, the judgment in *Metzler* was entered against all defendants in that case, and therefore the proposed third amended complaint would have necessitated vacatur of this favorable judgment for all defendants.  Case No. 16 Civ. 141 (KPF) Doc. 105.

Here, however, no such vacatur would be necessary because the PSAC would not bring allegations against any defendant against whom judgment has already been entered.  The settlement in this case resulted only in an entry of judgment against several individual defendants—none of whom would be named in the PSAC.  *See* Doc. 153, Doc. 173-1.  Defendants cite no case in which a court required plaintiffs to move for relief from a final judgment against *some* defendants, for the purpose of asserting claims against *different* defendants.  *Cf. Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (judgment was entered against plaintiff, who sought leave to re-plead to remedy pleading defects identified in the order granting defendants' motion to dismiss); *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (same).  Indeed, the authority cited by Defendants in arguing for the application of Rule 60(b) relies heavily on the need to protect the finality of judgments.  *See, e.g.*, *Ruotolo*, 514 F.3d at 191 (discussing the need to apply Rule 15 in a way consistent with "the philosophy favoring finality of judgments and the expeditious termination of litigation") (quoting *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244–45 (2d Cir. 1991)).  While Plaintiffs' motion certainly raises issues regarding the expeditious termination of litigation, as

discussed *infra*, the PSAC would not disturb any judgments that have already been entered in this case.  Thus, the motion is properly analyzed under Rule 15(a), not Rule 60(b).

### B.      Leave to Amend Under Rule 15

Defendants oppose the motion under Rule 15 on several grounds:  dilatory motive, failure to cure by amendments previously allowed, undue prejudice, and futility.  The Court will deny Plaintiffs' motion in its discretion, as it finds that the multi-year power struggle between the plaintiff factions is evidence of bad faith and dilatory motive, and has also caused undue delay and prejudice in this case.

### i. Bad Faith and Dilatory Motive

It is not unusual to have different factions of plaintiffs in large shareholder lawsuits such as this.  For this reason, the PSLRA sets forth a process for the consolidation of related securities cases and appointment of a lead plaintiff that is "most capable of adequately representing the interests of class members" to control the direction of litigation.  15 U.S.C. § 78u–4(a)(3)(B).  It *is* unusual to have a multi-year power struggle between plaintiff factions after lead plaintiffs have been appointed, complete with competing motions for centralization and transfer, multiple requests to reopen the lead plaintiff appointment process, and an appeal of the settlement to the Second Circuit.  That is what happened here.

While Rule 15(a) sets forth a liberal standard, a Court may exercise its discretion "more exactingly" under Rule 15 when a party "has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave."  *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990).  This is because "[a] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."  *Id.*  (citation and quotation marks omitted).  Moreover, a Court may make a finding of bad faith

when a party "made a tactical decision to disclaim allegations . . . and to wait until after the Court's judgment to alter substantially its legal theory." *In re Gen. Elec. Co. Sec. Litig.*, No. 09 Civ. 1951 (DLC), 2012 WL 2892376, at \*5 (S.D.N.Y. July 12, 2012). Bad faith may also "be revealed through . . . material changes to facts and theories pled if the new facts and theories were known to the plaintiff at the outset of the case." *MacGregor v. Milost Glob., Inc.*, No. 17 Civ. 6691 (LTS)(KHP), 2019 WL 2453340, at \*5 (S.D.N.Y. Apr. 19, 2019), *report and recommendation adopted*, 2019 WL 2723522 (S.D.N.Y. July 1, 2019) (citation omitted).

The Court finds that Co-Lead Plaintiffs made tactical decisions not to allege the claims they now seek leave to add, in favor of pursuing a settlement with the Settling Defendants. Compounding this issue, the *McIntire* Plaintiffs failed to follow the applicable PSLRA procedure for seeking appointment as lead plaintiffs in this action, instead filing their own action in the Southern District of Florida and repeatedly objecting to the actions of Co-Lead Plaintiffs in this case. While the instant motion is the result of Plaintiffs finally having made their peace, there is no reason this could not have happened years ago, as set forth in more detail below. The Court will thus decline to reward the parties' behavior and deny leave to file the PSAC. The *McIntire* complaint remains pending in this Court.

The *Gingello* Lead Plaintiff Appointment

The *McIntire* Plaintiffs first filed suit against Patriot in Delaware Chancery Court on November 30, 2016. The first-filed federal district case, however, was *Gingello*, filed in this District on March 14, 2017. The PSLRA sets forth a process for the consolidation of related securities cases and appointment of a lead plaintiff, in which the named plaintiff in a first-filed putative class action publishes a notice, within 20 days of the filing of their complaint, informing potential class members that "not later than 60 days after the date on which the notice is

published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u–4(a)(3)(A)(i).  The *McIntire* Plaintiffs did not file any case in this Court or District or seek appointment as lead plaintiffs after *Gingello* was filed.[2]

If they had done so, the Court could have considered all parties' lead plaintiff applications in the first instance, issued a decision on the lead plaintiff motion, and avoided the battle that ensued.  Instead, they filed a separate action in the Southern District of Florida.  When counsel for the *McIntire* Plaintiffs was asked about the timing of the *McIntire* filing, he simply stated that "[w]e weren't ready [to file before the *Gingello* Plaintiffs].  We weren't interested in filing that yet.  So when we were in fact ready, we filed our case."[3]  Doc. 64 at 31:11–13.  While the Court recognizes that the timing of the *Gingello* filing may have impacted the *McIntire* Plaintiffs' ability to bring what they viewed as the strongest possible complaint, this does not excuse their failure to preserve their right to seek appointment as Co-Lead Plaintiffs in this matter.

For their part, none of the Co-Lead Plaintiffs or individual plaintiffs in *Gingello* or *Kayce* raised any Securities Act claims or claims against BDO in their complaints, and the statute of repose for the Section 11 and 12 claims lapsed on January 15, 2018.[4]  Indeed, in the nearly ten months from the filing of the *Gingello* complaint to the expiration of the repose period, no party moved to add any Securities Act claims.  Were it not for the *McIntire* case, no timely Securities

---

[2] In opposing the motion to transfer *McIntire* to this district, the *McIntire* Plaintiffs argued that they had no opportunity to move for appointment as lead plaintiffs in *Gingello* because they had not purchased Patriot National shares during the narrower class period originally asserted.  However, as Judge Bloom in the Southern District of Florida recognized in her order transferring the case, nothing prevented the *McIntire* Plaintiffs from filing an action with a broader class period in this district within the designated PLSRA time period, and seeking consolidation and appointment as lead plaintiffs.  *See* Doc. 103-1 at 12–13.

[3] Counsel also noted that the *McIntire* Plaintiffs had filed cases in Delaware Chancery Court on November 30, 2016.  Doc. 64 at 30:22–24.

[4] The *McIntire* action, however, was filed on January 12, 2018, within the Securities Act's three-year statute of repose.

Act claims would have been asserted anywhere.  Nevertheless, despite the fact that it would have been in the parties' interest to work together from the start, they fought over control of this case for roughly two and a half years before seeking leave to file this motion.

Co-Lead Plaintiffs' Pursuit of a Settlement Agreement

Following their appointment in February 2018, Co-Lead Plaintiffs' efforts in the ensuing months appear to have been focused on participating in mediation ordered by the bankruptcy court.  *See* Doc. 171 at 12.[5]  After mediation, Co-Lead Plaintiffs informed the Court on September 6, 2018 that they had reached a settlement in principle with the Settling Defendants and sought leave to file a consolidated amended complaint that would name several officers and directors to facilitate the settlement.  Doc. 68 at 1.  The letter also stated in a footnote that Co-Lead Plaintiffs intended to add the claims against the Underwriters and BDO now at issue.  *Id.* The Court granted the request and directed Plaintiffs to file a consolidated amended complaint by October 18, 2018.  Doc. 72.

However, when the October 18, 2018 deadline to file the FAC came around, Co-Lead Plaintiffs appear to have found themselves in a bind, as no named plaintiff had timely asserted the Securities Act Claims.  Moreover, while Co-Lead Plaintiffs had stated their intention to seek consolidation of this matter with *McIntire* as early as February 2018, no such motion to intervene and transfer was filed in *McIntire* until September 5, 2018—only one day before Co-Lead Plaintiffs wrote to the Court to inform it of the prospective settlement.  Thus, by Co-Lead Plaintiffs' October 18, 2018 deadline to file the FAC, the Southern District of Florida had not yet rendered a decision on their (recently-filed) motion to intervene and transfer.  At this point, Co-

---

[5] Plaintiffs state that they became aware that Remaining Defendants—i.e., the Underwriters and BDO—would not participate in the mediation "during the pendency of the mediation process," but it is not clear from the record precisely when this occurred.  Doc. 171 at 12 n.5.  They also state that the *McIntire* Plaintiffs opted out of settlement discussions "late in the mediation process."  *Id.* at 12.

Lead Plaintiffs could have requested an extension of time to file the FAC until after the *McIntire*
claims were consolidated into this case, or the parties could have come to an agreement to bring
the sort of consolidated complaint they now propose.  However, Co-Lead Plaintiffs instead filed
the FAC without asserting any Section 11 or 12 claims, and chose to move ahead with their
settlement as to the Settling Defendants.[6]  This series of events suggests that consolidation of this
matter with *McIntire* and assertion of the Securities Act claims and claims against BDO were not
a priority for Co-Lead Plaintiffs, at least until they were certain that a deal with the Settling
Defendants had been reached.

Meanwhile, the parties continued to battle over control of this case.  In their application
to the JPML, the *McIntire* Plaintiffs argued that the actions were substantially similar and
centralization would avoid duplicative litigation.[7]  Co-Lead Plaintiffs opposed centralization,
relying heavily on the need to consummate the impending settlement with the Settling
Defendants.  *See, e.g.*, Doc. 162-2 at 8:21–23 (stating to the JPML that "we have a pending
settlement that we think should go out to the public . . .").  Indeed, despite Co-Lead Plaintiffs'
stated intention to bring Section 11 and 12 allegations, they were at times non-committal about
whether they would assert these claims at all at before *McIntire* was transferred and
consolidated.  *See id.* at 6:21–24 (Counsel for Co-Lead Plaintiffs stated to the JPML that they
intended "to proceed with the settlement" and that "in the meantime, I guess we'd see what
happens with these—what we think are lesser claims against the auditors and underwriters.");

---

[6] Plaintiffs did, however, include a footnote in the FAC indicating that, if *McIntire* were transferred to this district,
they would seek to have it consolidated with this action and to file a further amended complaint to effectuate that
consolidation.  Doc. 74 at 1 n.1.

[7] The *McIntire* Plaintiffs, however, took the opposite position in their briefs opposing transfer of the case to the
S.D.N.Y., as Judge Bloom observed in her opinion.  *See* Doc. 103-1 at 11 (noting that the *McIntire* Plaintiffs had
argued in the intervention motion, contrary to their representations to the JPML, that the discovery or legal theories
involved in *McIntire* would be "far more comprehensive.").

Doc. 94 at 27:17–19; 28:4 (Counsel for Co-Lead Plaintiffs stated to the Court that "I know [the *McIntire* Plaintiffs] also tried to make the point that the '33 Act claims is the strongest claim. I'm not sure that's really true. We looked at that ourselves and I will pass on it" and that the claims "had some real problems.").

Ultimately, Co-Lead Plaintiffs prevailed and *McIntire* was transferred to this district and consolidated with this case on July 22, 2019. *See* Doc. 103-1, Doc. 123. However, even then, Co-Lead Plaintiffs did not seek leave to amend to bring these claims. Instead, they continued to pursue approval of a final settlement as to the Settling Defendants, which the *McIntire* Plaintiffs opposed. Indeed, in Co-Lead Plaintiffs' reply brief in support of the settlement, they noted that "their decision not to assert Securities Act claims was well within their discretion." Doc. 142 at 5. Judgment was entered against Settling Defendants on November 6, 2019, and the *McIntire* Plaintiffs appealed to the Second Circuit.[8] All told, Co-Lead Plaintiffs did not seek leave to amend the complaint to add these claims until over sixteen months after the *McIntire* case was consolidated with this one, and over two and a half years after the end of the statute of repose period for these claims.[9]

On this record, the inescapable conclusion is that both Plaintiff factions had multiple opportunities to make peace and bring a consolidated class action complaint in this case as early as February 2018—or perhaps earlier had the *McIntire* Plaintiffs sought appointment as lead plaintiffs in this action—but failed to do so. Moreover, Co-Lead Plaintiffs could have pursued

---

[8] The Court acknowledges that, at the fairness hearing to approve the settlement, counsel for Co-Lead Plaintiffs again stated his intention to "allege those claims against certain other defendants after this settlement process is completed." Doc. 157 at 7:10–11. However, the Court's decision today is not based on any failure of Co-Lead Plaintiffs to timely state their *intention* to assert these claims; it is based on their failure to actually assert them. In any event, the Court did not have Defendants' full slate of objections to the PSAC before it at the fairness hearing.

[9] While the *McIntire* Plaintiffs have joined the instant motion, they did not join Co-Lead Plaintiffs' initial letter request for a conference to discuss the motion. *See* Doc. 160.

Securities Act claims or claims against BDO in the first instance. *Cf.* Doc. 142 at 5 (representing that it was within Co-Lead Plaintiffs' discretion not to assert Securities Act claims). Indeed, Counsel for Co-Lead Plaintiffs represented that he believed Harold Ireland, who would be named in the PSAC, would have standing to assert such claims as early as November 2018. *See* Doc. 94 at 28:13–15. However, due to the prolonged infighting between the parties in pursuit of control over this case, as well as Co-Lead Plaintiffs' prioritization of the settlement agreement, none of this happened. The Court will therefore decline to reward the Co-Lead Plaintiffs' "tactical decision" to pursue particular claims and defer asserting others. *See In re Gen. Elec. Co. Sec. Litig.*, No. 09 Civ. 1951 (DLC), 2012 WL 2892376, at *3 (S.D.N.Y. July 12, 2012). The motion for leave to file the PSAC is denied.

### ii.     Defendants' Futility Arguments

Defendants also argue that filing the PSAC would be futile due to various timeliness and standing issues. This would certainly be true were it not for the consolidation of *McIntire* with this action. However, given the *sui generis* procedural posture of this case, several of these issues present difficult and novel questions regarding the impact of the consolidation of the *McIntire* action. However, it is not necessary to resolve all of these questions today because, regardless of whether amendment can be characterized as futile as a jurisdictional matter, Defendants have raised compelling prudential arguments that permitting amendment under these circumstances would violate both the intent of the PSLRA and the Securities Act's statute of repose. The Court therefore finds that Defendants' futility arguments largely support the Court's decision to deny Plaintiffs' motion in its discretion.

1.      **Statute of Repose**

Defendants argue that the Section 11 and 12 claims are barred by the Securities Act's

three-year statute of repose, as Patriot's IPO was issued on January 15, 2015.[10]  However, the

*McIntire* Plaintiffs raised these claims in the *McIntire* complaint on January 12, 2018, which

unquestionably falls within the three-year statute of repose.  The parties differ, therefore, on how

this action's July 22, 2019 consolidation with *McIntire* impacts the timeliness of the PSAC.

Defendants first argue that the PSAC would violate the rule set forth in *Police & Fire*

*Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013).  In *Indymac*, two

putative class actions were filed and consolidated, one by the Wyoming State Treasurer and

Wyoming Retirement System (collectively, "Wyoming") and one by the Police and Fire

Retirement System of the City of Detroit ("Detroit").  *See In re IndyMac Mortgage-Backed Sec.*

*Litig.*, 793 F. Supp. 2d 637, 641 (S.D.N.Y. 2011).  Wyoming was appointed lead plaintiff and

filed an amended complaint—which was styled as applicable to "all actions" and did *not* name

Detroit as another named plaintiff.  *Id.* at 644.  This extinguished Detroit from the case, and

Detroit raised no objection.  *Id.*  The district court subsequently dismissed Wyoming's Section

11 and 12 claims based on its lack of standing.  Detroit then moved to intervene in the case to

assert these claims, but the district court found that doing so would be improper, as Detroit's

claims were at that point time-barred under the Securities Act's statute of repose.  *Id.*  The

Second Circuit affirmed, finding that "absent circumstances that would render [Detroit's] newly

asserted claims independently timely, neither Rule 24 nor the Rule 15(c) 'relation back' doctrine

permits members of a putative class, who are not named parties, to intervene in the class action

---

[10] The registration statement in connection with the IPO was filed with the SEC on January 14, 2015.  *McIntire*
Complaint ¶ 561.

as named parties in order to revive claims that were dismissed from the class complaint for want of jurisdiction."  721 F.3d at 111–112.

While the *Indymac* decision bears some similarity to this case, it differs in a crucial respect:  The *McIntire* Plaintiffs brought timely Section 11 and 12 claims in the Southern District of Florida, and—unlike Detroit's claims in *Indymac*—these claims have not been extinguished by dismissal, nor by the filing of a consolidated amended complaint that failed to name them. Moreover, because the *McIntire* case was consolidated into this one on July 22, 2019, the Court must also consider the impact of the cases' consolidation under Fed. R. Civ. P. 42(a).

Under Rule 42(a), consolidation "preserv[es] the distinct identities of the cases and the rights of the separate parties in them."  *Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018).  Under the unusual posture of this case, both parties argue that the above principle supports their respective theories.  Plaintiffs argue that under *Hall*, consolidation has preserved the *McIntire* Plaintiffs' right to bring their timely-alleged Section 11 and Section 12 claims notwithstanding their consolidation into this case, because consolidation should not "deprive any party of any substantial rights which he may have possessed had the actions proceeded separately."  *Hall*, 138 S. Ct. at 1130 (quoting 3 J. Moore & J. Friedman, Moore's Federal Practice § 42.01, 3050–3051 (1938)).  Thus, Co-Lead Plaintiffs essentially argue that the PSAC would be a straightforward exercise of their "responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff . . . [with] distinct interests or claims."  *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003).

Defendants, however, argue that permitting Plaintiffs to file the PSAC would effectively permit Co-Lead Plaintiffs to circumvent the statute of repose, and assert a claim they would not have been able to assert but for the action's consolidation.  The implication of Defendants'

argument is that permitting this amendment would "enlarge or modify a substantive right" in violation of the Rules Enabling Act—both in terms of presenting Co-Lead Plaintiffs with a right they let had let lapse (i.e., to assert Securities Act claims on behalf of the putative class), and prejudicing Defendants, who have a "substantive right . . . to be free from liability after a legislatively-determined period of time." *See Indymac MBS, Inc.*, 721 F.3d at 106, 109 (internal citations and quotation marks omitted); s*ee also Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2053 (2017) ("*CALPERS*") ("[T]he purpose of a statute of repose is to give the defendant full protection after a certain time.").

The parties have identified a difficult issue on which there is no direct guidance from the Second Circuit or the Supreme Court, and both parties proffer reasonable readings of *Hall* and the principles of consolidation. Ultimately, the Court finds that even if Plaintiffs are correct as a jurisdictional matter, the Court would still deny the motion in its discretion. This is because granting the motion would permit Co-Lead Plaintiffs to raise claims on behalf of the class that they apparently had no intention of asserting at all until the *McIntire* Complaint was filed. Moreover, while the Court is mindful of the fact that consolidation cannot alter the *McIntire* Plaintiffs' substantive rights, the claims as alleged in the original *McIntire* Complaint remain pending before the Court—putting them in the same situation they were in before this motion.

Finally, the Court notes that its decision is consistent with the principles underlying Section 13's statute of repose. The statute of repose creates a substantive right for defendants to be free from liability from an "action" brought after the statutorily determined period of time. As described above, at various points in this litigation the Court has affirmed the Co-Lead Plaintiffs' ability to control this litigation, and at various points they either equivocated or failed to assert these claims despite stating an intention to do so. *See, e.g.*, Doc. 162-2 at 6:22–24; Doc.

19

94 at 27:17–19; 28:1–6.  Thus, while Defendants were duly notified of the *McIntire* Plaintiffs'

putative class claims within the repose period, they have had to wait until nearly three years after

the expiration of the statute of repose for the parties to set aside their differences and bring these

claims as a consolidated class action with more detailed facts.  Even if this is not improper as a

jurisdictional matter due to the actions' consolidation, it is in tension with Section 13's purpose

of making clear, after a three-year period, the number and identity of suits and the nature of the

claims against Defendants.  *Cf. CALPERS*, 137 S. Ct. at 2053 (declining to permit late-filed

individual suits by class members following the denial of class certification).  Thus, *Indymac*

provides additional support for the Court's discretionary decision to deny leave to amend.

### 2.     Defendants' Remaining Futility Arguments

Defendants make several other arguments regarding the futility of amendment.

Statute of Limitations

*First*, Defendants argue that the Section 11 and 12 claims are also barred by the one-year

statute of limitations, and the claims against BDO are barred by Section 10(b)'s two year

limitations period.  The same analysis set forth above applies to the Securities Act claims.  That

is:  Defendants are correct that these claims would also be time-barred were it not for the

addition of the *McIntire* Plaintiffs, and it declines to permit Co-Lead Plaintiffs to assert them via

consolidation in its discretion, even if it were not futile for them to do so.

Defendants also make a perfunctory argument that the *McIntire* Plaintiffs were on inquiry

notice of their Section 11 and 12 claims as early as November 2016, when they filed their action

in Delaware, thus suggesting that the assertion of all Section 11 and 12 claims would be futile.

*See* Doc. 175 at 24; Doc. 177 at 5 n.1.[11]  This issue has not been substantively briefed by the

---

[11] BDO did not separately argue that the *McIntire* Plaintiffs' Section 10(b) claims were barred by the statute of limitations in its brief; rather, it limited its 10(b) statute of limitations arguments to Co-Lead Plaintiffs' assertion of

parties and is not necessary to decide to resolve this motion, so the Court declines at this juncture

to identify a date at which the *McIntire* Plaintiffs were on inquiry notice of their claims as a

matter of law.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427–28 (2d Cir.

2008) (noting that inquiry notice may be found as a matter of law only when "uncontroverted

evidence clearly demonstrates when the plaintiff should have discovered the fraudulent

conduct").  Rather, it is sufficient to note that it would be inappropriate to permit Co-Lead

Plaintiffs to assert these claims now, given that they have previously represented to the Court

that they believed there were issues with the statute of limitations in the *McIntire* Complaint that

accounted for Co-Lead Plaintiffs' failure to initially assert them:

> "MR. DEUTCH:  . . . [W]e thought the '33 act claim had some real problems particularly
> with the statute of limitations – not the statue of repose, the statute of limitations."
>
> THE COURT: This is with respect to your clients?
>
> MR. DEUTSCH: Or to anybody – or including Wasik and McIntyre [sic] bringing that
> claim."
>
> *See* Doc. 94 at 28:4–9 (Transcript of November 14, 2018 status conference).

Thus, the Court will not permit Co-Lead Plaintiffs to take a contrary position regarding

the statute of limitations now that it is strategically beneficial to them to do so.  *See In re Gen.*

*Elec. Co. Sec. Litig.*, No. 09 Civ. 1951 (DLC), 2012 WL 2892376, at *5 (S.D.N.Y. July 12,

2012).

<u>Standing for Securities Act Claims</u>

Defendants also argue that Co-Lead Plaintiffs lack standing to assert Section 11 and 12

claims, because they do not allege that the Patriot shares they purchased are traceable to the

---

the claims in the PSAC.  However, at oral argument counsel for BDO argued that the *McIntire* Plaintiffs' assertion of
the 10(b) claims would be futile.  *See* Doc. 194 at 26:25–27:7.

allegedly misleading registration statement.  It is true that a plaintiff asserting Section 11 claims must "be able to trace their shares to an allegedly misleading registration statement." *In re Petrobas Sec. Litig.*, 116 F. Supp. 3d 368, 384 (S.D.N.Y. 2015) (internal citation and quotation marks omitted).   However, it is not necessary that a lead plaintiff have standing over every claim alleged in a consolidated amended complaint. *See In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003).  Rather, it is sufficient that "at least one named plaintiff must be a member of that class—that is, a named plaintiff must have purchased shares traceable to the challenged offering." *Id.* at 207.  In other words, a lead plaintiff may "construct[] a consolidated complaint that brings claims on behalf of a number of named parties [who have standing] besides the Lead Plaintiffs themselves." *Id.* at 205.

Because the PSAC would allege that McIntire "purchased Patriot National common stock pursuant to the registration statement . . ."  the standing requirement would be met for the Section 11 and Section 12 claims. *See* Doc. 173-1 at ¶26.  *See Caiafa v. Sea Containers, Ltd.*, 525 F. Supp. 2d 398, 407 (S.D.N.Y. 2007) ("The pleading requirement for Section 11 standing is satisfied by 'general allegations that plaintiff purchased pursuant to or traceable to [a] false registration statement.") (citation omitted); *see also In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 589 (2d Cir. 2005) (a plaintiff must allege that they purchased their shares in the initial public offering to have standing to assert Section 12(a)(2) claims).

Defendants nevertheless argue that Plaintiffs should not be permitted to add the *McIntire* Plaintiffs to this suit for the purpose of curing its prior jurisdictional defects.   Defendants are correct that "if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient claim." *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012) (internal quotation marks and

alterations omitted).  However, the authority cited by Defendants addresses only situations where an individual plaintiff lacked standing over an existing claim, and proposed amending their complaint to add a wholly new party who did not have existing claims, for the purpose of curing the original defect.  *See MacGregor v. Milost Glob., Inc.*, No. 17 Civ. 6691 (LTS)(KHP), 2019 WL 2453340, at *8 (S.D.N.Y. Apr. 19, 2019), *report and recommendation adopted*, 2019 WL 2723522 (S.D.N.Y. July 1, 2019).  Similarly, while the Court in *Indymac* relied on the same principle to prevent the Detroit plaintiffs' intervention, *Indymac* did not involve a situation where the proposed new party was a consolidated plaintiff with live claims, as the *McIntire* Plaintiffs are here.[12]

In any event, even assuming that Article III's standing requirements would be met, the same prudential concerns that counseled against permitting Co-Lead Plaintiffs to assert untimely claims on behalf of the proposed class also militate against permitting the addition of claims over which all previous named plaintiffs have lacked standing.  Under the PSLRA, nothing would have prevented Co-Lead Plaintiffs from earlier working to identify class members with standing to craft the sort of consolidated amended complaint they now seek to bring:  Indeed, it is a lead plaintiff's "responsibility" to do so.  *In re Global Crossing*, 313 F. Supp. 2d at 205.  Here, however, Co-Lead Plaintiffs did not seek to craft such a complaint until October 2020, despite representing to the Court as early as November 11, 2018 that they had a plaintiff (Harold Ireland, whom they now propose adding to the PSAC) who could "step into the shoes of the '33 Act plaintiff anyway."  Doc. 94 at 28:14–15.  Thus, Plaintiffs' failure to expeditiously exercise this

---

[12] Indeed, the Court in *Indymac* noted that Detroit, "through minimal diligence, could have avoided the operation of the Section 13 statute of repose simply by making timely motions to intervene in the action as named plaintiffs*, or by filing their own timely actions* and, if prudent, seeking to join their claims."  721 F.3d at 112 (emphasis added).

responsibility militates against granting leave to file the PSAC, even if Article III standing is present.[13]

### Actionable Misrepresentations or Omissions

Finally, Defendants argue that the PSAC pleads no actionable misrepresentation or omission.  However, they fail to identify the basis on which any alleged misrepresentation is not actionable.  Thus, the Court cannot find the PSAC futile on this basis.

### iii.     Defendants' Remaining Discretionary Arguments

Defendants' other discretionary arguments overlap with the analyses set forth above, and the Court will address them only briefly.

First, Defendants argue that there has been undue delay and prejudice resulting therefrom.  Under Rule 15, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (internal quotation marks and citation omitted).  This motion comes after a nearly four-year delay from this action's inception, and a nearly three-year delay from the filing of the *McIntire* Complaint.  While this delay is significant, the Court's decision is not strictly based on the passage of time.  Rather, as discussed above, it is the delay in combination with the fact that the PSAC comes after the failure of Co-Lead Plaintiffs to assert these claims within the appropriate statute of repose, in the FAC, or upon consolidation of this action with *McIntire*, due to apparent strategic considerations.

---

[13] The Court notes that, in this respect, the PSLRA's requirements are intended to *avoid* the splintering of litigation and breakdown into unmanageable factions.  *In re Global Crossing*, 313 F. Supp. 2d at 204–05 (requiring lead plaintiffs to have standing over every claim asserted would require "either the appointment of a large number of lead plaintiffs [undermining the goal of a cohesive leadership and management group] or the premature breakdown of the action into an unmanageable number of separate cases brought by different lead plaintiffs on behalf of each potential subclass of securities holders.").  This principle in particular calls into question why Co-Lead Plaintiffs did not earlier seek to add Ireland.

Defendants have also argued that they are prejudiced by the delay.  For instance, at oral argument, counsel for the Underwriters claimed that Defendants would have to "find witnesses and files that are six years old," *see* Doc. 194 at 23:3-4.  Counsel for BDO also argued that certain witnesses from BDO had since retired.  *Id.* at 29:2–11.  The Court recognizes that there is some prejudice to Defendants associated with this prolonged delay.  Regardless of whether this prejudice would be sufficient to deny leave to amend on its own, it provides additional support for the Court's determination that Plaintiffs should not be rewarded for failing to bring these claims earlier.

Finally, Defendants argue that Plaintiffs have failed to cure by amendments previously allowed, citing Co-Lead Plaintiffs' failure to add Securities Act claims or claims against BDO when they filed the FAC on October 18, 2018.  Doc. 175 at 18.[14]  As discussed *supra*, their failure to do so then was attributable to the then-dueling transfer and centralization motions, as the plaintiff factions were at that point still battling over control of these claims.  Thus, the parties' failure to come to an agreement in advance of filing the FAC provides further support for the Court's decision to deny leave to amend now.

## IV.     CONCLUSION

For the reasons discussed, Plaintiffs' motion to file the PSAC is DENIED.  The *McIntire* Action remains pending in this Court.  The remaining parties are directed to appear for a status conference on August 20, 2021 at 9 a.m.  The conference will be held remotely and by telephone, and the parties are instructed to dial (877) 411-9748 and enter access code 3029857# when prompted.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 170,

---

[14] As previously discussed, however, Co-Lead Plaintiffs did include a footnote in the FAC seeking to preserve their right to do so.  Doc. 74 at 1 n.1.

and the associated motions regarding oral argument, Docs. 181 and 189.  The Clerk of Court is

further directed to file a copy of this order in member cases *McIntire v. Mariano*, No. 19 Civ. 98

and *Kayce v. Patriot National, Inc.*, 17 Civ. 7164.

It is SO ORDERED.

Dated:   August 5, 2021
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.